IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| In re the Matter to Enforce Subpoena Issued to Crowe LLP ) ) ) ) | Miscellaneous Action<br><br>No. |

## MOTION TO ENFORCE SUBPOENA ISSUED TO CROWE LLP

COMES NOW, Movants Viceroy Research LLC, Fraser Perring, Gabriel Bernarde, and Aidan Lau (collectively "Movants"), who are Defendants in the underlying case of *Medical Properties Trust, Inc. v. Viceroy Research LLC, et al.*, No. 2:23-cv-00408-RDP, pending in the USDC for the Northern District of Alabama, and move the Court to order Crowe LLP ("Crowe") to comply with a subpoena duly served upon Crowe and produce the requested documents therein. Movants also request that Crowe be ordered to pay Movants their reasonable attorneys' fees in bringing this enforcement action. In support of this motion, movants state as follows:

### BACKGROUND

**General Case Background**

The underlying action is a defamation case that the Plaintiff Medical Properties Trust, Inc. ("MPT") has brought against Movants. Movants are financial market researchers and short sellers who publish articles about public companies that they believe are overvalued. MPT is a publicly traded real estate investment trust ("REIT") that buys real estate owned by hospitals and leases the real estate back to the hospitals.

Beginning in January 2023, Movants published a series of reports that disclosed that they were short MPT's stock and set forth the reasons why. The thesis of their reports was that MPT's tenants, particularly for-profit hospital giant Steward Health Care System LLC ("Steward"), were insolvent and that MPT was masking that insolvency by providing working capital to its tenants

1

through uncommercial transactions. These sham transactions were entered to enable Steward and other tenants to meet their basic financial obligations, including their substantial rent obligations to MPT. Movants alleged that MPT did so, because, among other reasons, its executives obtained millions in annual bonuses based on the rent received from its tenants and the performance of MPT's stock.

MPT's suit claims that Movants' statements about the financial condition of its tenants and the fact that MPT was round tripping working capital into these tenants through uncommercial transactions were untrue and defamatory.

The evidence to date, however, reveals that Movants' statements were true: in May of 2024, Steward filed for bankruptcy (one of the largest in health care history), and MPT has been forced to write off hundreds of millions of dollars of working capital loans that it provided to Steward to attempt to keep it afloat. MPT is also now confronted with the need to concede substantial rent cuts to Steward's successors, as no buyer has emerged that is willing to purchase Steward's hospitals subject to the crippling rents that MPT and Steward saddled them with.

As a result, MPT's stock has plummeted from a high of about ~ $21 in December of 2021 to ~ $4 today. Further, it has been reported that Steward and potentially its infamous CEO—Ralph de la Torre, who extracted a $111 million "dividend" from Steward in 2021 after MPT infused Steward with $400 million in working capital to stave off Steward's bankruptcy—is under criminal investigation by the US DOJ for corruption and fraud. *See* Pat Milton, *Steward Health Care Under Federal Investigation for Fraud and Corruption, Sources Tell CBS News*, CBS News, July 11, 2024.[1]

---

[1] Available at https://www.cbsnews.com/news/steward-health-care-federal-investigation-fraud-corruption-hospitals/#.

**Crowe's Audit of Steward and MPT's/Steward's Illegal Surveillance of Movants and Crowe**

One of Movants' key defenses in this case is that the statements in their reports were true. Movants also intend to prove that this case was improperly brought by MPT in collusion with Steward as part of their larger campaign to damage and silence all critics against the companies. The documents in Crowe's possession, custody, and control are material to these defenses.

*First*, Crowe—a public accounting firm—attempted to conduct an audit of Steward in 2022, during a time that Movants claim Steward was insolvent and receiving improper working capital support from MPT. Importantly, Crowe could not complete or sign off on the audit, and to this day—despite multiple requests from regulators—Steward has been unable to procure audited financial statements for 2022. According to an explosive article published this month by the Organized Crime and Corruption Report Project ("OCCRP"), during its audit of Steward, Crowe raised concerns "about a possible several-hundred-million-dollar hole in [Steward's] budget." *See* Declaration of Richard M. Elias ("Elias Decl.") at ¶ 1, Exhibit 1, Khadija Sharife, *U.S. Healthcare Firm Embroiled in Malta Corruption Scandal Spent Millions on Private Spies*, July 1, 2024 ("OCCRP Article").[2] Movants believe that documents related to these financial irregularities will help expose Steward's financial façade and the extent of its insolvency, which existed well before it filed for bankruptcy in May 2024.

*Second*, Movants believe the documents sought will shed light on MPT's and Steward's campaign to silence and damage anyone who spoke negatively about the companies. It has recently come to light that Crowe and Movants were targets of an illegal surveillance campaign

---

[2] Available at https://www.occrp.org/en/investigations/us-healthcare-firm-embroiled-in-malta-corruption-scandal-spent-millions-on-private-spies.

that MPT's and Steward's joint counsel—Quinn, Emanuel, Urquhart & Sullivan, LLP (Quinn Emanuel)—initiated through a spy firm called Audere International ("Audere"). *See id.* Importantly, Quinn Emanuel, and its lead partner, Anthony Bongiorno, have represented both MPT and Steward at all relevant times in this case despite the clear conflict of interests between the landlord and its insolvent tenant. *See* Elias Decl. at ¶ 3. Further, MPT has admitted that Quinn Emanuel hired Audere to conduct work for MPT around the same time that Quinn Emanuel hired Audere to spy on Movants, Crowe employees, and Steward's own employees. *See* Elias Decl. ¶ 4, and Exhibit 2 (email exchange between Movant's counsel and MPT's counsel).

The OCCRP Article set forth evidence that in early 2023, when Crowe raised its concerns about the Steward audit and Movants published their reports about MPT and Steward, Quinn Emanuel hired Audere to track Movant Perring and his family by, among other things, placing a tracking device on his car, videotaping him at night at his home, and breaching his bank and cellular data. *See* Elias Decl., Ex. 1, OCCRP Article. At the same time, Quinn Emanuel hired Audere to breach the data of a Steward employee they referred to as "Pudding," whom they were afraid would reveal sensitive financial information to Crowe and Movants. *Id.* Quinn Emanuel was attempting to set Pudding up for blackmail by improperly accessing the employee's private electronic communications with a sex worker and obtaining comprising photos of the employee. *Id.*

The depth and extent of the spy campaign are illustrated in the following Audere diagram obtained and published by the OCCRP, which reflects MPT's and Steward's efforts to spy on Movants, Hedgeye (a vocal critic of MPT and Steward), Steward's employee ("Pudding"), and Crowe and its partners (who are depicted in blue), among others:

**Audere Diagram Published OCCRP Article**

[Whiteboard diagram image]

Credit: OCCRP

A whiteboard diagram put together by Audere International showing "Pudding" (circled) as a target, along with Viceroy, the research company whose head had also been targeted, and Crowe, an external auditor on a Steward property deal.

Shortly prior to publication of the article, the OCCRP contacted Movant Perring and provided him detailed evidence of the criminal invasions of his privacy, including, among other things, job sheets that described Audere's efforts to (1) place a tracker on his car, (2) trespass onto his property to video record him at night while at home, (3) plan a scheme to disable his CCTV system and break into his home to obtain physical access to his personal computer, and (4) breach his personal data, including his cellular phone and bank account data. Declaration of Fraser Perring ("Perring Decl.") ¶ 2.

Following discovery of this evidence, Perring did his own investigation and independently verified that he had been illegally surveilled. *Id.* ¶ 3. For example, he contacted his bank, HSBC, about the issue, who then did an investigation. *Id.* HSBC then contacted Perring and told him that his account had been improperly accessed by an imposter who called an obscure HSBC phone line, which was not generally available to the public, that allowed account

5

access with reduced security verification requirements. *Id.* HSBC confirmed that the person (whose voice was recorded) was clearly not Perring. *Id.* The bank further confirmed that by providing minimal personal information about Perring, the imposter was able to obtain detailed information about Perring's banking activity. *Id.*

**The Subpoena at Issue**

On July 3, Movants served Crowe with a subpoena for the production of documents. Elias Decl. ¶ 5, Ex. 3, Crowe Subpoena. That subpoena was served on Crowe's registered agent in Chicago, Illinois. Elias Decl. ¶ 6, Ex. 4, Proof of Service. The document requests are narrowly tailored to seek communications and related documents relevant to any audit or financial work that Crowe did for Steward in 2022 or 2023, including any irregularities or concerns identified in any such audit or financial work.

On July 15, 2024, Crowe's in-house counsel sent Movants a letter stating Crowe's objections to the subpoena. Elias Decl. ¶ 7, Ex. 5, Crowe's Letter Objecting to Subpoena. The letter contained boilerplate objections and categorically refused to produce any documents pursuant to the subpoena. *Id.*

That same day, Movant's counsel sent Crowe's counsel an email expressing Movants' desire to meet and confer and the need to do so expeditiously given the time constraints of the underlying case. Elias Decl. ¶ 8. Movants' counsel followed up with a voicemail, and then attempted counsel again the next day by phone and email. *Id.* Despite these efforts, Crowe's counsel has failed to provide *any* response. *Id.*

## ARGUMENT

Under Fed. R. Civ. P. Rule 26(b):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Here, the discovery sought is clearly relevant to Movants' claims and defenses against MPT. Movants intend to prove that their alleged defamatory statements are in fact true—namely, that in 2022 (and before), Steward was insolvent and suffering from financial irregularities that were so egregious that their own auditors refused to sign off on their financial statements. Crowe's audit work and the substantial hole of several hundred million dollars in Steward's budget that it discovered goes directly to these issues.

The discovery sought is also proportional to the needs of the case. This is a high-stakes action of public import, where MPT is seeking billions of dollars in damages from Movants. In its attempt to conjure its farcical claims, MPT has colluded with Steward through Quinn Emanuel to engage in criminal surveillance and smearing of multiple targets, including Movants. The public significance of these issues weighs heavily in favor of the production of the discovery sought.

The discovery requested is reasonably limited to financial work that Crowe did during a discrete time frame in 2022 and 2023. Movants have, of course, always been willing to meet and confer with Crowe to discuss narrowing the scope of the subpoena, if necessary, but Crowe has failed to engage in those discussions.

## **CERTIFICATION UNDER LOCAL RULE 37.2**

Movants' counsel has attempted to reach Crowe's counsel in good faith to attempt to resolve this discovery dispute, but such attempts have been unsuccessful due to no fault of Movant's counsel. Specifically, Movant's counsel sent an email to Crowe's counsel on July 15, 2024, and followed up with a phone call. Crowe's counsel did not answer, and Movant's counsel left a voicemail. The next day Movant's counsel sent another email and again attempted to call Movant's counsel without success.

## **CONCLUSION**

For these reasons, Movants respectfully request that the Court issue an order requiring Crowe to fully comply with the subpoena within 30 days, and for an award of its fees and costs associated with this motion.

Dated: July 18, 2024 

Respectfully submitted,

**ONDERLAW, LLC**

*/s/ W. Wylie Blair*
W. Wylie Blair, #06285762
ONDERLAW, LLC
110 E. Lockwood Ave, 2nd Fl
St. Louis, MO 63119
Tel: (314) 963-9000
Fax: (314) 963-1700
blair@onderlaw.com

and

Richard Elias
Elias LLC
Attorney, Of Counsel
Pro Hac Vice to be filed
27 W. Lockwood Ave
St. Louis, MO 63119
(314) 391-6820
relias@eliasllc.com
*Attorneys for Movant*

**CERTIFICATE OF SERVICEE**

I hereby certify that a copy of the foregoing was sent to Crowe's counsel on July 18, 2024 by email.

/s/ Richard M. Elias