Exhibit 2

**Subject:** Re: Medical Properties Trust, Inc. v. Viceroy Research LLC, et al.
**Date:** Friday, July 12, 2024 at 8:29:29 PM Eastern Daylight Time
**From:** Richard Elias
**To:** Melman, Charles M.
**CC:** Anthony Bongiorno, Cullerton, Nate, Eddy, Sarah K., Ekechukwu, Adabelle U., John Ferraro, Meghan S. Cole, Melinda Bommarito, Michael L. Bell, Park, Jane, Savitt, William D., Ted Ovrom, Wes Gilchrist, Worcester, Corey (Quinn Emanuel Urquhart & Sullivan LLP), kent@jkenthompsonlaw.com

Charles,

Thank you for your email. I want to preface my response with the proviso that I know you are just the messenger, and, unsurprisingly, this particular message went from the partner level to the associate level.

Your response is unsatisfactory. What you have failed to explain is how in the world MPT can claim that it independently hired the same spy firm (Audere) through the same counsel (Quinn Emanuel/Anthony Bongiorno) at the same time that the same counsel (Quinn Emanuel/Anthony Bongiorno) hired the same spy firm (Audere) to commit criminal acts against my client. The criminal acts included breaking into Fraser Perring's bank accounts at HSBC.

Included in the information we have received are portions of a report from Audere that describes Fraser's private banking activity in early 2023. When we received this information and learned that his data had been breached, Fraser presented the information to HSBC. HSBC's security team then conducted an exhaustive investigation, and confirmed, based on audio recordings, that there had been a security breach, and that somebody who was not Fraser Perring called HSBC and told them that he was Fraser Perring and authenticated the lie by providing HSBC with Fraser Perring's personal information. This is criminal conduct in the UK, the USA, and all 50 states state within. If you believe otherwise, please provide authority.

We are appalled. And we are shocked. We also note that Jomaire Crawford— an esteemed partner at Quinn Emanuel for 11 plus years— was with Quinn Emanuel prior to the publication of the OCCRP article, but was no longer there within two days after the article dropped. We also note that she is still counsel of record in this case, and no one has moved to withdraw her.

We are also informed that information will come to light in the very near future that directly contradicts your assertions in your email, particularly your claim that MPT had no idea about Steward's/Quinn Emanuel's/ Audere's illegal surveillance of my clients.

I also want to inform you that of the many mistakes that Quinn Emanuel's clients have made, perhaps the most colossal is suing my clients. Now we have your documents. Now we have the [REDACTED] the unmistakable and undeniable evidence that MPT and Steward entered into a criminal conspiracy, where, in 2020, MPT agreed to replace Steward's equity partner (Cerberus) while Steward was insolvent, and infuse Steward with $400 million in working capital (that it disguised through ridiculously uncommercial transactions), so that Ralph del la Torre could declare a $111 mm "dividend" from a bankrupt Steward so that he

could, among other things, buy a $40 mm yacht. I will then show them that MPT's CEO deliberately lied and hid this information from investors, while he was paid tens of millions of dollars in bonuses for his role MPT's purported success.

Game on.

Richard M. Elias.

On Fri, Jul 12, 2024 at 5:38PM Melman, Charles M. <CMMelman@wlrk.com> wrote:

> Rich,
>
> While your email contains numerous mischaracterizations and unsupported assertions that have no bearing on application of the work product privilege, in a further effort to resolve this issue, we note the following:
>
> 1.  As we previously stated, the report has nothing to do with Steward.  Audere was engaged in October 2022 by MPT's counsel, Quinn Emanuel, on behalf of MPT and in anticipation of litigation. The only parties to the engagement were MPT, Quinn Emanuel, and Audere. The report was prepared pursuant to that engagement. Audere did not conduct any work for Steward pursuant to the engagement.
>
> 2.  MPT was billed for, and paid for, Audere's work pursuant to the engagement. Steward was not billed for and did not pay for any work pursuant to the engagement. There was no cost sharing or cost shifting or reimbursement agreement with anyone, including Steward, of any kind.  The report was not provided to Steward or any other third party and neither MPT nor Quinn Emanuel coordinated or collaborated with Steward concerning the report in any way.
>
> 3.  As we previously stated, the report has nothing to do with your clients. It was prepared before MPT even knew your clients existed as Viceroy had yet to publish anything about MPT when the report was prepared.  Your questions concerning search terms and the subject matter of the report improperly seek to invade protected work product and are irrelevant.
>
> 4.  The email you asked about does not have sender or recipient metadata because it is an unsent draft.
>
> 5.  As for your claims of "collusion," none of the reporting you've pointed to suggests

that MPT (who is barely mentioned in the reporting) played any part in the purported "illegal activity" you allege, and indeed makes clear that Steward, not MPT, engaged Audere separately and paid for that work separately.

We have more than satisfied our burden of establishing that the report is protected work product. *See, e.g.*, *Adams* v. *City of Montgomery*, 282 F.R.D. 627 (M.D. Ala. 2012); *Brasfield & Gorrie, LLC* v. *Hirschfeld Steel Grp. LP*, 2021 WL 5449203 (N.D. Ala. Nov. 22, 2021). If you have any contrary authority you would like us to consider, please provide it.

We are available to meet and confer should you have any further questions.


Regards,

Charlie


**Charles M. Melman**
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street | New York, NY 10019
+1 (212) 403-1383 (Direct) | +1 (212) 403-2383 (Fax)
CMMelman@wlrk.com | www.wlrk.com

---

**From:** Richard Elias <relias@eliasllc.com>
**Sent:** Wednesday, July 3, 2024 4:54 PM
**To:** Melman, Charles M. <CMMelman@wlrk.com>
**Cc:** Eddy, Sarah K. <SKEddy@wlrk.com>; Ekechukwu, Adabelle U. <AUEkechukwu@wlrk.com>; John Ferraro <johnferraro@quinnemanuel.com>; Meghan S. Cole <mcole@lightfootlaw.com>; Melinda Bommarito <mbommarito@eliasllc.com>; Michael L. Bell <mbell@lightfootlaw.com>; Park, Jane <JPark@wlrk.com>; Savitt, William D. <wdsavitt@WLRK.com>; Ted Ovrom <tedovrom@quinnemanuel.com>; Wes Gilchrist <wgilchrist@lightfootlaw.com>; Worcester, Corey (Quinn Emanuel Urquhart & Sullivan LLP) <coreyworcester@quinnemanuel.com>; kent@jkenthompsonlaw.com; Cullerton, Nate <NDCullerton@wlrk.com>; Anthony Bongiorno <anthonybongiorno@quinnemanuel.com>
**Subject:** Re: Medical Properties Trust, Inc. v. Viceroy Research LLC, et al.

**\*\*External Email-Use Caution\*\***

Charles,

Thank you for confirming that Audere was engaged by Quinn Emanuel on behalf of MPT to conduct work for MPT.

It is now public that prior to, during, and following MPT's receipt of the Audere report at issue, Quinn Emanuel had also hired Audere to perform work for Steward—who Quinn Emanuel has also represented at all relevant times (despite the irreconcilable conflict of interests between MPT as landlord and lender, on the one hand, and Steward as insolvent tenant and borrower, on the other). This work included unethical and criminal acts perpetrated against my clients, including, among other things, (1) surveillance of Fraser Perring and his family, including his young daughter, that involved criminal trespass on his property and illegally tracking his car, (2) an illegal breach of his bank account records (we have seen the Audere-sponsored reports summarizing these breaches), (3) an illegal breach of his phone records (we have seen the Audere-sponsored reports summarizing these, as well), and (4) a defamation and misinformation campaign through websites and social media handles with undisclosed owners and operators. It now appears that MPT and Steward were colluding in this illegal conduct through Quinn Emanuel and Audere—who were both performing "existential" work for the parties. We expect this collusion will be even further substantiated in additional publications in the coming weeks.

Your email below failed to address most of my questions and has not established that the Audere report is entitled to work product immunity. Further, it is inconceivable that Quinn Emanuel could have been, as you claim, working with Audere separately for its work relating to MPT and Steward, and that the work you claim was done for MPT had nothing to do with Steward.

Therefore, we request that you provide the following information immediately:

- The metadata for the email transmitting the Audere report at issue indicates that the email and withheld report came from Ed Aldag's custodial files. The document, however, is missing metadata as to the sender and recipients of the document. Please provide an updated document that contains that metadata so we can determine the email's sender and recipients.

- I repeat my previous questions: What was the subject matter of the Audere report?

- o Did it involve anyone who MPT claims were co-conspirators with Defendants, including Rob Simone, Hedgeye, other MPT short sellers, or media outlets publishing negative or unflattering information about MPT, including the Wall Street Journal?

- o If so, please identify who it involved.

- I also repeat my previous questions: what search terms hit on the Audere report such that you determined that it was a responsive document that you would withhold on the grounds of work product immunity?

- Was there a specific engagement agreement for the work in connection with the Audere report at issue?

  - o If so, who were the parties to that engagement agreement?

  - o Was the engagement agreement limited to services in connection with the specific report being withheld, or was it part of a more general engagement between Quinn Emanuel and Audere?

  - o If the latter, did Audere also perform work related to Steward under the terms of this engagement agreement?

- Who paid Audere for the work in connection with the report?

  - o Did MPT pay Audere directly?

  - o Did Quinn Emanuel pay Audere and then bill for it? If so, who did Quinn Emanuel bill? Did it bill Steward for any of this work?

- o Did MPT or Steward ever agree to share in the cost of the services in connection with the Audere report at issue? Were those costs ever shifted or otherwise reimbursed by MPT to Steward or vice versa in any way, whether it be direct cash payments, in kind payments, forgiveness of obligations, credits, or otherwise?

- More generally, while MPT was investigating and considering suit against Viceroy or the alleged "co-conspirators," including Rob Simone and Hedgeye, did MPT and Steward ever agree to share in the costs of Quinn Emanuel or Audere in any way, including direct cash payments, in kind payments, forgiveness of obligations, credits, or otherwise? If so, please describe.

- Did MPT, Quinn Emanuel, or Audere share the Audere report at issue, its findings, or any data related to the report with Steward or any other third party, either written or orally? If so, please describe.

If we do not get prompt answers to these questions that satisfies us that you have met your burden of establishing work product immunity over the Audere report, we will address this issue with the Court.

Thank you.

Richard M. Elias

**From:** Melman, Charles M. <CMMelman@wlrk.com>
**Date:** Monday, June 24, 2024 at 2:54 PM
**To:** Richard Elias <relias@eliasllc.com>
**Cc:** Eddy, Sarah K. <SKEddy@wlrk.com>, Ekechukwu, Adabelle U. <AUEkechukwu@wlrk.com>, John Ferraro <johnferraro@quinnemanuel.com>, Jomaire Crawford <jomairecrawford@quinnemanuel.com>, Meghan S. Cole <mcole@lightfootlaw.com>, Melinda Bommarito <mbommarito@eliasllc.com>, Michael L. Bell <mbell@lightfootlaw.com>, Park, Jane <JPark@wlrk.com>, Savitt, William D. <wdsavitt@WLRK.com>, Ted Ovrom <tedovrom@quinnemanuel.com>, Wes Gilchrist <wgilchrist@lightfootlaw.com>, Worcester, Corey (Quinn Emanuel Urquhart & Sullivan

LLP) <coreyworcester@quinnemanuel.com>, kent@jkenthompsonlaw.com <kent@jkenthompsonlaw.com>, Cullerton, Nate <NDCullerton@wlrk.com>
**Subject:** RE: Medical Properties Trust, Inc. v. Viceroy Research LLC, et al.

Rich,

Your speculation notwithstanding, as we explained on our meet and confer, the document is work product. It was prepared for MPT in anticipation of litigation at the direction and under the supervision of Quinn Emanuel, who engaged Audere in connection with its representation of MPT, not Steward. The document has nothing to do with your clients or with Steward. MPT is not withholding any other Audere-related documents on the basis of attorney-client or work-product privileges.

Regards,

Charlie

---

**From:** Richard Elias <relias@eliasllc.com>
**Sent:** Wednesday, June 12, 2024 3:16 PM
**To:** Cullerton, Nate <NDCullerton@wlrk.com>
**Cc:** Eddy, Sarah K. <SKEddy@wlrk.com>; Ekechukwu, Adabelle U. <AUEkechukwu@wlrk.com>; John Ferraro <johnferraro@quinnemanuel.com>; Jomaire Crawford <jomairecrawford@quinnemanuel.com>; Meghan S. Cole <mcole@lightfootlaw.com>; Melinda Bommarito <mbommarito@eliasllc.com>; Melman, Charles M. <CMMelman@wlrk.com>; Michael L. Bell <mbell@lightfootlaw.com>; Park, Jane <JPark@wlrk.com>; Savitt, William D. <wdsavitt@WLRK.com>; Ted Ovrom <tedovrom@quinnemanuel.com>; Wes Gilchrist <wgilchrist@lightfootlaw.com>; Worcester, Corey (Quinn Emanuel Urquhart & Sullivan LLP) <coreyworcester@quinnemanuel.com>; kent@jkenthompsonlaw.com
**Subject:** Re: Medical Properties Trust, Inc. v. Viceroy Research LLC, et al.

---

**\*\*External Email-Use Caution\*\***

Nate,

As a quick follow up to our conversation today, you asked me to pose the questions we would like to have answers to so that we can understand and evaluate your claim of work product immunity on the Audere report referenced below. The immunity applies to "documents and tangible things that are prepared in anticipation of litigation or for trial." Fed. R. Civ. P. 26(b)(3)

(A). We need to understand why the Audere report is a document that MPT can plausibly claim was in fact prepared for MPT in anticipation of litigation or for trial.

Therefore, we request that you please identify your complete factual basis for your claim of work product immunity for this document. In conjunction with this response, please answer the following questions:

> Who hired Audere?
>
>> Was it MPT or one of its agents?
>>
>> Was it Steward or one of its agents?
>>
>> Was it MPT's counsel? If so, was it Quinn Emanuel who represents both MPT and Steward?
>
> What was the subject matter of the Audere report?
>
>> Did it involve anyone who MPT claims were co-conspirators with Defendants, including Rob Simone, Hedgeye, other MPT short sellers, or media outlets publishing negative or unflattering information about MPT, including the Wall Street Journal?
>
> In conjunction with the question immediately above, what search terms hit on the Audere report such that you determined that it was a responsive document that you would withhold on the grounds of work product immunity?
>
> Did MPT pay Audere either directly or indirectly for its work in connection with the report? Indirect payments include payments to any counsel that hired or paid Audere, payments or reimbursements to Steward or its agents (whether in cash or in kind), or any adjustments in MPT's or Steward's books to shift the accounting of the payment to MPT in whole or in part. If so, please identify the nature of the payment.
>
> Who were Audere's client or clients?
>
>> Was it MPT?
>>
>> Was it Steward?

> Was it both?
>
> Was it Quinn Emanuel? If so, which Quinn Emanual client was Audere ultimately serving—MPT, Steward, or both?
>
> If Audere was working for Steward, or Steward and MPT simultaneously, how do you justify a claim of work product immunity for MPT given that Steward is purportedly an independent third party?
>
> If MPT claims not to have hired Audere directly or indirectly, does MPT consider itself a beneficiary of the Audere report such that it would be entitled to claim work product immunity? If so, please justify your position.

We further request for to identify any other Audere reports or Audere-related documents or communications that you are withholding on the grounds of work product immunity.

Also, in further follow up to our call, we are formally requesting a privilege log. Please advise when we can expect to receive one.

I appreciate your prompt response to this issue.

Richard M. Elias

---

**From:** Richard Elias <relias@eliasllc.com>
**Date:** Tuesday, May 28, 2024 at 8:01 PM
**To:** Cullerton, Nate <NDCullerton@wlrk.com>
**Cc:** Eddy, Sarah K. <SKEddy@wlrk.com>, Ekechukwu, Adabelle U. <AUEkechukwu@wlrk.com>, John Ferraro <johnferraro@quinnemanuel.com>, Jomaire Crawford <jomairecrawford@quinnemanuel.com>, Meghan S. Cole <mcole@lightfootlaw.com>, Melinda Bommarito <mbommarito@eliasllc.com>, Melman, Charles M. <CMMelman@wlrk.com>, Michael L. Bell <mbell@lightfootlaw.com>, Park, Jane <JPark@wlrk.com>, Savitt, William D. <wdsavitt@WLRK.com>, Ted Ovrom <tedovrom@quinnemanuel.com>, Wes Gilchrist

<[wgilchrist@lightfootlaw.com](mailto:wgilchrist@lightfootlaw.com)>, Worcester, Corey (Quinn Emanuel Urquhart & Sullivan LLP) <[coreyworcester@quinnemanuel.com](mailto:coreyworcester@quinnemanuel.com)>, [kent@jkenthompsonlaw.com](mailto:kent@jkenthompsonlaw.com) <[kent@jkenthompsonlaw.com](mailto:kent@jkenthompsonlaw.com)>
**Subject:** Re: Medical Properties Trust, Inc. v. Viceroy Research LLC, et al.

Nate,

Thank you for your email below. In our meet and confer tomorrow, we have issues of our own we would like to discuss.

First, we would like to discuss why, despite my many requests, MPT has not identified the status of its document production. We appreciate that MPT's production is ongoing, but need clarity as to what searches have been conducted and produced and what remains outstanding. Foremost among our concerns are communications with Steward executives, including MPT's commitment to comprehensively review and produce communications between RDLT and certain MPT executives. These communications have clearly not yet been produced and we need to understand the status and timing of this review and production.

Second, MPT's production is littered with puzzling claims of privilege and non-responsiveness. We will address many of these issues in a subsequent email, but one needs immediate attention. Document MPT00161076 is a cover email to Ed Aldag attaching an "Audere Report." The report itself, however, has been withheld on the purported grounds of "privilege." What is your bases of "privilege" here? Audere, according to its website, is an intelligence and investigation firm. Is this a firm that MPT hired to conduct a litigation-related investigation in this case, and is your claim of "privilege" actually a claim of work product protection? If so, please identify the bases of your claim, as it is your burden to do.

Please be prepared to discuss these issues on tomorrow's call. And, in the event that you are not immediately prepared to discuss them, I encourage you to consult with your co-counsel prior to the call in the event that they elect not to participate.

Thank you, and I look forward to speaking tomorrow.

Rich.